Case number 16-1031, Natalie Ruisi et al. Petitioners v. National Labor Relations Board. Mrs. Helen for the petitioners, Mr. DeCant for the respondent. Good morning. Erin Solem for Natalie Ruisi and Michael Peluso. May it please the Court. This board has issued an arbitrary decision for an arbitrary and discriminatory policy. The ALJ merely concluded in a very skeletal opinion that a union has no duty to respond to requests for time-sensitive and immediately accessible information when that request is merely made over the telephone. This is wrong under board law, and we cite six cases between pages 18 and 21 of our brief where the board held the union has a duty to respond to oral requests. This duty is even more important here because of the time-sensitive nature of window periods. And Operating Engineers on page 21 proves exactly our point. There, an employee orally requested a union business agent give him copies of names, addresses, telephone numbers of employees on the out-of-work register. The union business agent said, no, this information is private, and I am far too busy to give it to you. The board said the union had a duty to give this information, and it was acting arbitrarily. The union couldn't claim a privacy interest in third parties' addresses and telephone numbers because they were necessary. Of course, the board counsel now claims that there's a privacy interest in this case, but Maurice and Peluso were only asking for their own dates. They weren't even asking for third parties' information. The union didn't say they weren't going to give it, but they were too busy. They said, we need it for you in writing, that's all. Right, and the union can't. The board has never said that's an impermissible. Quite the contrary, as a matter of fact. The board has never said that's an impermissible requirement. There's one case that the board can cite, and that's Boston Gas, where they say it's not unduly burdensome to require a writing to actually revoke a checkoff. This wasn't attempting to revoke a checkoff. This was attempting just to find information about it. And the union can't hide behind the process because it violates the duty of fair representation because there's no reason basis and, in this case, is very discriminatory. All they said was give the request in writing. There was nothing that would cause most people to think this was a serious concern. It's not easily accessible to them. The record indicates sometimes it is, sometimes it's not. The record? If they were concerned about interests of individuals or protecting, just send it to me in writing. And, in fact, when they got it, they gave it. Well, no, actually, the facts of this case actually show something the opposite. It shows why they needed it immediately. Peluso, when he actually sent his letter, the window period is only 15 days long. It took the union 12 days to respond, and they sent it to the wrong address. He wouldn't have even gotten the right. Then they re-sent it to the right address, and he didn't receive it. If you look at the board's decision, he didn't actually receive the letter for four months. He only knew because he called and they told him after he sent the letter. But I want to dispute that this is not easily accessible. We're not denying anything. We're talking about the duty of fair representation, which is a very, very high standard for you to meet. You're forgetting what the baseline is. It is a very high standard for you to meet, and you have to show some really bad behavior on the part of the union. And the fact that there were some mistakes or some mis-mailing or whatever, there's nothing to indicate that the union was unwilling to give this information. All we're talking about is the union recently saying, give us a written request. Well, that's one part. That's one part. And, of course, none of this appears in the board's decision. But the second part is a discriminatory test. The union gives out dates where you actually joined the union. So an example proves the point how this is discriminatory. I call up the union. I sign my membership card and my checkoff card on the same date. This happens all of the time. It's very common. I call up the union. I say, what day did I become a member? The union says, oh, we'll tell you that. It's April 1st. Well, will you give me my checkoff card? No, we can't give that. It's the same date. That makes it discriminatory. It's not the same consequence and it's not the same nature of information. That's what the record makes it very clear. But the only difference between those two is the union's pecuniary interest. The union designs this 15-day window period. It doesn't have to have a 15-day window period. But that doesn't mean that it's impermissible because they have it. It doesn't make it unlawful. Well, there isn't any case law to suggest that. And intuitively, it doesn't even make sense. If they have a requirement that you put it in writing, that's not even intuitively wrong. There's certainly nothing in the law that says that it's impermissible. Well, first I want to get back to the DFR standard. The fact that it's annoying doesn't make it unlawful. Well, it is because they are fiduciary and they have a high standard of fair dealing. You have a much higher standard to prove a breach of the duty of fair representation. Well, you know, there's an ebb and a flow to this. So the union's duty is at its lowest power when it's not operating in its representational capacity. Judge Tatel recognized this in Plumbers and Pipefitters, which we cite on page 19 of our brief. And there he said when the union is acting outside of its representational abilities, the union has a high standard of fair dealing. And the same as the Supreme Court said in Berninger that when the employee stands against the union as an institution, that's at its highest point. The duty of fair representation is at its highest point. I'm still not getting it. They were not refusing to give the information. And, indeed, when they got the written request, they gave it. Your response is simply within the mails followed up. That's not a response. Well, it's time-sensitive and immediately accessible. That's what makes a difference. We're asking for a very, very thorough release. But the record is against you on immediately accessible. I mean, the record indicates that sometimes the date that's inputted into the computer is wrong, and sometimes they have to actually go find the dues card with the checkoff and that it's not always immediately accessible. And the record, well, it's not the record, it's a board decision, is that if they give the wrong date, then that's an unfair labor practice. So they can't screw it up because then that's a ULP. Well, I disagree on the record. First, at JA 5354, the union business agent testifies she can access this in under a minute or two. So it takes, you know, a minute. Almost all of the time. In this case, she could have all the time. This case, clue says dates weren't entered wrong. So the board is supposed to make a decision based on this case because it could be done easily. If it's going to be this case, then that's the standard for every case. Well, I don't know if it's the standard for every case. But in this case, the question is, does the union have, A, a reasonable reason to deny it? None of these reasons appear in the board's opinion. No, no, no. The union invoked a reasonable rule. Did they follow a reasonable rule that they followed? Was their procedural rule permissible? It's not whether there was a mess-up that was inadvertent. It's whether the rule that they were following was a reasonable rule. And if not, was it so bad that it violated the duty of fair representation? I don't know how you get there with this case when all they're saying is, just send it to us in writing. And when they did, the union got the information. Yeah, but there's all these other cases, too, like California saw. Felter, specifically the Supreme Court, said process can't trump an individual's rights. And an individual has a right to learn this information. It's extremely time-sensitive because if they miss it by one day, the employee is on the hook for the rest of the year. But if they call, let's say they call a day late, then they've missed it. Here, you have to request in writing presumably, say, a week ahead of time to accommodate the mail and what have you. But, I mean, there are a lot of requirements that agencies have and courts have and everyone has for things in writing. And they're a pain. I agree they're a pain. But does that make it unreasonable? Well, it does make it unreasonable when there's a fiduciary and when it is easily accessible. I want to get back to the point. If they admitted that Palouse's card was in the record, it would have taken her 30 seconds to look it up. And if the union wants to protect itself. But there are other interests they cite. And I understand you're going to say these are bureaucratic impediments that are unnecessary. But they do say, look, if we get it in writing, then that avoids mistakes. It avoids litigation. There's some work in privacy interests. And it does take some time to do it over the phone. And I hear you on that just seems like a pain and unnecessary. That's probably true. But is it unreasonable to do that when so many things are requested and required in writing? Well, you know, the boards tell other requirements that things be in writing are unreasonable or violate the act. For example, it can't require membership resignations in the act. And this is a rule to be in writing. You can give verbal membership resignations under the act. And this is a rule that's unwritten. Nobody knows about it until they call and it's sprung on them. And then they have to go through another process. And it's similar to the certified mail requirement that was struck down in California Song. It's similar to the dual resignation requirement that was struck down in Felter and then adopted by the board later. So it's part and parcel that as a fiduciary they have a duty of loyalty and honesty. And, again, the union doesn't have to have this 15-day window period. And I would also point to the Fifth Circuit's decision in Shea and the Ninth Circuit's decision in Robeskey where they said that a union's pure interest in its own pecuniary interest is not reasonable under the duty of fair representation. And that's what the union is relying on here. That's what's really happening here. They're not relying on that. That's what you think is really happening. And I'm not going to dispute that. If the union wants to protect itself, they can send a letter in response to a phone call. They can send an email in response to a phone call. It's very easy. That all misses the point. The fact that the union can do this 27 other ways doesn't tell us whether this is a breach of the duty of fair representation. The fact that you can think of more convenient or less onerous rates has nothing to do with whether the question is properly reported. That's not consistent with board law, because I would point again to operating engineers. Operating engineers specifically says the union can't rely on more complex ways. If you can present an easier way, then it's not reasonable. And we're presenting an easier way. If they can present justifications in the way they have chosen, the law does not say that's a breach of the duty of fair representation, even though it, in the eyes of some, is onerous. Under the arbitrary standard, but we're also arguing this is discriminatory. But we don't think that this is necessarily arbitrary, because it's not just any justification. It has to be a reasoned justification. And the three justifications that the board has now produced that appear nowhere in the decision. Of course, the decision is just a case that says, well, there's no duty. Well, obviously, there's a duty to respond. Six board cases say they have the duty to respond orally. But this is a case where it's easily accessible and it's time-sensitive. And so in a very narrow circumstance, I would say they have to produce it under the fiduciary duty. What if it took five minutes to access the information? That would be a much different case. That would be slightly more burdensome. But that's not the case here. We're asking for a very narrow case where she said she could look it up under two minutes. Pelusa's card was scanned into the system. She could easily access it. She could verify their information. She testified, I can verify who they are based on their Social Security number if they tell me over the phone. So there's really no privacy interest. There's no time interest. This is just a hurdle that the union has erected to stop people from getting out. I want to give an example of a different situation. Let's say I call my cable company. I say, when can I get out of my contract? They say, we're not going to tell you. We're not going to tell you unless you send a letter. You'd say, oh, my gosh, this is ridiculous. You can just tell me. They say, no, you don't have to send a letter. We just want to be really certain. Well, everybody would know that, well, you're just operating in your own interest. You're just trying to hassle me. This is exactly what the union is doing here. And that's what makes it a violation. I think the cable company in your hypo would say they're trying to avoid making mistakes where someone, the wrong person, calls and cuts off your cable. Like your neighbor is pranking you and cutting off your cable. Sure. But if you can verify like the union can, then you can say, okay, well, tell me your Social Security number and we can look it up in our system. It's very, very simple. And the cable company example is even worse because the union, as Judge Cato recognized in Plumbers and Pipefitters, owes a fiduciary responsibility to these people, a high standard of fair dealing. And, you know, yeah, it's a letter, but a letter is no different under board law in our opinion than the certified mail request that is deemed illegal, the resigning on a union-provided form that was declared illegal. We think it's part and parcel. In the union's justifications, we present a much easier, much simpler way. When it's time-sensitive information, the employees bear all of the brunt of this. And part of your argument is that they just didn't explain it sufficiently. That's right. There's nothing. Nobody knows about this until they call. It's not on the card. So even if, let's say, we were uncertain about the rationale, we could remand. And part of your argument, just to be clear, is we could remand the board for it to explain this in more detail, and then we could assess it. I think at the very least we get a remand. The board's decision is really skeletal, and it doesn't address all of these other factors that we've listed here today. So you could definitely remand, but, you know, our opinion of remand is futile because if you look at the fiduciary duty, if you look at the unique facts in this case, we're only asking for a very narrow ruling, this policy is illegal under the duty. Right. But we have a deferential standard, so we have to be careful before jumping in. Yeah. And I don't think the deferential standard applies because this is a very skeletal opinion. And then even if they brought it back up on these facts for all the reasons we list. Okay. We'll give you some time in rebuttal. Thank you. May it please the Court. I'm Kyle DeCant on behalf of the National Labor Relations Board. The petitioners never mentioned the standard for arbitrariness in violation of the duty of fair representation, which is that the union's policy must be so far outside of a wide range of reasonableness as to be irrational. And so as the board found when assessing the union's policy, when an employee requests their authorization date from the union, it has a need to ensure that the union provides the correct employee with the correct information. The respondent's brief provides precedent where a union can be liable for providing the incorrect information to an employee. And so against that background, the board, when analyzing the union's policy, found that the request in writing allows the union to properly verify and create a paper trail to ensure that the employee is receiving the correct information. And your argument is it doesn't take very long to write an opinion when you're looking at that standard of duty of fair representation and the facts are uncontested. It's a no-brainer. It doesn't take a long opinion to explain. There's nothing to explain. Yes, Your Honor. The union's rationale is fairly clear, and the board applied the precedent clearly, which is that the policy is not so far outside a wide range of reasonableness as to be irrational. I mean, that's what I'm concerned about. But the standard of review, the legal standard, the applicable legal standard here is very, very tough. The duty of fair representation, and you correctly stated it, it requires a big, big showing on the part of the claimant. The question here is that they, you know, you can come close to that. That's correct, Your Honor. What do you say about the, they think there's precedent head-on, that's dispositive? What's your response? Your Honor, those cases are about when the union flat-out denies giving information to employees. Here the union has a system for giving the information, and it says if you put the request in writing, that allows us to properly verify it, and they can match the records with the paper trail. The union has one director of operations with a small staff that oversees a membership of over 50,000 members, and so they have a system that allows them to properly verify the information and ensure that the right information gets to the right employee. On the liability, couldn't they follow up with a, after giving the information on the phone, follow up with a letter or email confirming the information so that there was no misunderstanding? They can, Your Honor. But this is the system that the union chose, and this was the system that the board evaluated. The union could have had a different policy, and the board would apply the standard to that. But in this system, the board likes the, or the union preferred, the request to be in writing, and that they have the option to submit the authorization card. So there's no dispute over who said what and when it was said. And where in the, where should I look in the board's opinion for the explanation of why this is permissible in all the interests you cite? Yes, Your Honor. So that would be when they cite to mail handlers local 307, when they point out that the standard for, in a case like this, I apologize. Yeah, the standard for when a case like this is, when the union chooses whether and how to get that info, the standard is whether the policy is so far outside a wide range of reasonableness as to be rational. You can also look to postal service, where the board considered when employees submitted a request and they were in, responded to with the information about what their date was, as long as the request was in writing. And so through a clear application of these precedents and these standards, the union's rationale is not so far outside of a wide range of reasonableness. They didn't discuss, I mean, I don't, I'm not sure they need to discuss, but they didn't discuss the different rationales that support this, the privacy, the avoid litigation, protection from the wrong date, the verification, all the different interests that you cite in your brief are not laid out in the opinion. Your Honor, they discussed the credibility of Union Director of Operations, Wanda Henry, and what she said, and they note that nothing said by the petitioners is sufficient to meet the very clear standard for demonstrating that this would be arbitrary in representation. And so given the rationale provided by the union and the credibility analysis, the board found that it's a very clear application of precedent and that a rule asking for there to be a paper trail and that the union can verify the request and properly give the correct information to the correct employee is simply not so far outside a wide range of reasonableness as to be irrational. So onto the, the two other points of the duty of fair representation, the petitioners are unable to demonstrate that the union's policy is discriminatory because the policy of requiring written requests for the authorization date was applied uniformly to the entire class of employees who had signed authorization cards. And the petitioners are unable to demonstrate that the policy is unrelated to any legitimate union motive because the union has well established that if necessary, it has a need to provide the correct information to the correct employees consistent with its duty of fair representation. And furthermore, onto the petitioner's argument that bad faith is involved here, they also have to meet a demanding standard there for showing that the union has acted in bad faith. And in doing so the petitioners would need to show fraud, deceitful, or dishonest action that is significantly egregious or so intentionally misleading as to be invidious. And here the union applied or the, the union told the employees when they called the same policy that gave out every time it acted wholly in good faith and there was no difference in how it treated these employees versus any other. And this all goes back to the fact that the board applies the arbitrary standard in cases like this. And it found that having a policy that allows the union to create a paper trail that the union finds is the most effective way for it to provide this information to these employees is most consistent with its duty of fair representation because it's not so far outside of a wide range of reasonableness as to be irrational. If the court has no further questions. Thank you. Thank you. A remand would be appropriate because there's nothing in the board's decision that says it's private. They never adopt that. There's nothing in the board's decision that says that the union has a litigation interest. So a remand has to be the answer here. The board's decision is just too skeletal to withstand review. Well, they cite the cases and the interest for a request in writing, I think their argument would be pretty obvious. Well, the cases they cite are pretty inapposite. Like Local 307 dealt with a duty of fair representation in a bargaining where a person signed a settlement agreement that said they didn't have a right to a grievance. Postal Service 302, the union didn't even have dates for check-offs in that case. So a union obviously doesn't have a duty to give what it doesn't have. So on our standard of review, we'd have to say, I think, that the board was unreasonable in finding what the union did was reasonable. Yeah. A double level, though, of deference, arguably, because the board is applying or analyzing the union's actions with some level of deference to the union. We're, in turn, applying a level of deference to the board. I want to dispute the level of deference again. Because that's a big problem for you. Well, this court, specifically in Plumbers and Pipefitters, that O'Neill, the case that they rely on, is cabin to its facts. It's cabin to its facts about when the union is operating in its representational capacity, when it's negotiating an agreement. Here, what the union is doing is it's standing against the employees on a term and condition of employment, which is where the duty, as Judge Tatel recognized there, was a high standard of fair dealing. And at this case, I don't know how this case is all that substantively different from what the Supreme Court did in Felter, where they said process can't trumpet an individual's rights to learn of this information in order to properly revoke. It's all that people want to do is they just want to revoke. And unless there's any other further questions, I could say no. Okay. Thank you very much. Case is submitted.
judges: Kavanaugh, Wilkins, Edwards